NO. 07-00-0493-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 11, 2002



______________________________




CHARMIN LEE CREW, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 263RD DISTRICT COURT OF HARRIS COUNTY;



NO. 833,517; HONORABLE JIM WALLACE, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 Upon a plea of not guilty, appellant Charmin Lee Crew was convicted by a jury of
aggravated robbery and punishment was assessed at 55 years confinement. Presenting
three issues, he challenges his conviction. By issue one, he contends the evidence was
insufficient as a matter of law to support his aggravated robbery conviction. By issues two
and three, he contends the trial court erred in admitting evidence of an extraneous offense
in violation of Tex. R. Evid. 404(b) and 403. Based upon the rationale expressed herein,
we affirm.

 On October 9, 1999, at approximately 9:00 p.m., appellant and his accomplice
entered the Wheatley Food Store wearing masks concealing their faces. Appellant was
carrying a shotgun. The victim and her husband, owners of the store, were in the cashier
booth enclosed behind a plexiglass window. Appellant pointed the shotgun at the door of
the cashier booth and ordered the victim to open it. When the victim did not comply,
appellant pointed the shotgun at her, touching the plexiglass window with the weapon, and
without any further warning shot the victim in the head. 

 The two assailants immediately fled the scene on foot through a cemetery and field
to the home of an acquaintance to get a ride out of the area. While in the vehicle, the
driver overheard portions of the conversation between the two and testified at trial. A 
shotgun which had been customized and modified was recovered from the cemetery by
officers, which was later identified by the victim's husband as the weapon used in the
robbery. Police investigation first led to the name of appellant, but prior to questioning
him, police interviewed the driver. This interview led to the identification and confession
of appellant's accomplice, who implicated appellant as the individual who shot the victim. 
The accomplice also testified at trial. On August 17, 2000, appellant was found guilty of
the offense. 

 Considering appellant's issues in logical rather than sequential order, we first
consider issues two and three. By issue two, appellant contends the trial court erred in
admitting evidence of an extraneous offense in violation of Tex. R. Evid. 404(b), by
admitting into evidence photographs of a shotgun taken three years prior to this offense,
and testimony from the police officer who took the photographs. He argues this constituted
inadmissible character evidence or evidence of an extraneous offense. Appellant further
argues the requisite prior notice of such character evidence was not given in compliance
with Tex. R. Evid. 404(b). By issue three, appellant contends in the alternative this same
evidence should have been excluded under Tex. R. Evid. 403.

 A timely and reasonably specific objection is required to preserve error for appellate
review. Tex. R. App. P. 33.1(a); Butler v. State, 872 S.W.2d 227, 236 (Tex.Cr.App. 1994),
cert. denied, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). Where the alleged
error relates to the admission of evidence, a timely objection must be made stating the
specific ground of objection. Tex. R. Evid. 103(a)(1); Higgins v. State, 924 S.W.2d 739,
745 (Tex.App.-Texarkana 1996, pet. ref'd ). In addition, the objection at trial must comport
with the error complained of on appeal. Goff v. State, 931 S.W.2d 537, 551 (Tex.Cr.App.
1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997). Appellant
objected to the admission of the photographs and testimony at trial on the grounds that it
was inadmissible extraneous offense evidence and was substantially more prejudicial than
probative, but his objections were overruled. Here, he also contends the trial court erred
by admitting the photographs and testimony because the requisite notice was not given
under Rule 404(b). As to the issue of notice under the Rule, no objection was raised at
trial, and therefore this issue was not preserved for appeal.

 Whether evidence is admissible is within the sound discretion of the trial judge. 
Jackson v. State, 575 S.W.2d 567 (Tex.Cr.App.1979). Therefore, the standard of review
for admission or exclusion of evidence is abuse of discretion. Erdman v. State, 861
S.W.2d 890, 893 (Tex.Cr.App.1993). A trial judge does not abuse his discretion unless
he has "acted arbitrarily and unreasonably, without reference to any guiding rules and
principles." Breeding v. State, 809 S.W.2d 661, 663 (Tex.App.-Amarillo 1991, pet. ref'd). 
As long as the trial court's ruling was within the "zone of reasonable disagreement," there
is no abuse of discretion and the trial court's ruling will be upheld. See Rachal v. State,
917 S.W.2d 799, 807 (Tex.Cr.App.1996), cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136
L.Ed.2d 539 (1996). But, if it cannot be concluded from common reasonable experience
that the evidence has a tendency to make the existence of a fact of consequence more or
less probable, then the trial court's decision was not within the zone of reasonable
disagreement and it abused its discretion. Id.

 Therefore, the discretion to admit or exclude evidence is not absolute. For example,
extraneous offense or character evidence is generally inadmissible:

 Evidence of other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith. It may,
however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a
criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State's case-in-chief such evidence other than that arising
in the same transaction.


Tex. R. Evid. 404(b). Appellant urges the application of Rule 404(b), and argues generally
that the evidence was inadmissible because the State did not explain under which Rule
404(b) exception this evidence fell.

 We disagree with appellant's argument that the photograph of the shotgun and the
testimony regarding the photograph were somehow evidence of other crimes, wrongs, or
acts under Rule 404(b). To constitute an extraneous offense, the evidence must show a
bad act or crime and that the defendant was connected to it. Moreno v. State, 858 S.W.2d
453, 463 (Tex.Cr.App.1993), cert. denied, 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378
(1993); Lockhart v. State, 847 S.W.2d 568, 573 (Tex.Cr.App.1992), cert. denied, 510 U.S.
849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). 

 If no crime or bad act is shown, then the evidence is not extraneous offense
evidence. See Arthur v. State, 11 S.W.3d 386, 390 (Tex.App.-Houston [14th Dist.] 2000,
pet. ref'd). For example, testimony that "a traffic stop" had occurred would not create an
inference that the car in which appellant was found was a stolen vehicle. Id. Similarly
Rule 404(b) does not bar evidence that a vehicle in which defendant had been riding at
the time of his arrest had been reported stolen hours before the charged robbery. 
Rodriguez v. State, 975 S.W.2d 667, 684 (Tex.App.-Texarkana 1998, pet. ref'd). A
statement indicating that defendant had been in detention but showing nothing in regard
to what, if any, offense had been committed by defendant was not evidence of an
unadjudicated extraneous offense. Laca v. State, 893 S.W.2d 171, 185 (Tex.App.-El Paso
1995, pet. ref'd). Ultimately, if the proffered evidence does not show that an offense or
bad act was committed, then it is not evidence of an extraneous offense. See Arthur, 11
S.W.3d at 390.

 Appellant contends a photograph of a shotgun and officer testimony regarding the
photograph should not have been admitted into evidence at trial. The following exchange
took place after an objection from the appellant:

 MR. BARR: I have no idea what this witness is going to be testifying
to and I am concerned that Ms. Thornton maybe is
attempting [to] bring out through this witness some
information about a prior conviction of my client.

 MS. THORNTON: Just the fact that the shotgun was found in his
house three years ago, the one that was used in
the aggravated robbery.

* * *

 MR. BARR: I can tell you the only reason, Judge that shotgun was
found in his house on a prior occasion because he had
been arrested for the case that he ultimately got
probation for.

 THE COURT: What do we have exactly that-because the
ballistic-what do we have actually that ties this
shotgun to this offense?

 MR. BARR: Nothing.

 MS. THORNTON: Yes, we do.

 THE COURT: What?

* * *

 MS. THORNTON: Well, I believe I do. The complainant testified
that-Mr. Tran testified that the shotgun that was
used in the aggravated robbery. Not only did
Mr. Tran testify that was the shotgun that was
used in the aggravated robbery, Mr. Scott
testified that was the shotgun that was used in
the aggravated robbery. Not only that but Mr.
Buchanan just said that big man said he ditched
it in the cemetery.

 THE COURT: Is this officer going to be able to identify this
weapon by serial number?

 MS. THORNTON: No.

* * *

 MS. THORNTON: No, but the photograph was taken of this
weapon at the home of Mr. Big Man, Mr. Crew,
what? Tow and a half years ago in '97. 

***

 THE COURT: So the only thing that you are going to elicit from
the officer that he saw this weapon in the
defendant's home two and a half years ago
period.

 MR. BARR: This is also arguably extraneous. It's an extraneous
offense that she is trying to-

 THE COURT: What's extraneous about having a shotgun in
your home?

 MR. BARR: If you see the shotgun and see that the shotgun is
altered-

 MS. THORNTON: He was not charged.

 MR. BARR: It doesn't make any difference if he was charged. This
is a matter of bad acts and this is a matter of bringing
something that is going to be absolutely more
prejudicial than it is going to be probative in this case. 
There is no way about it. 

* * *

 THE COURT: The restriction is that you can ask the officer if
he had seen the shotgun before, develop it,
seen it in his home and that's it.


 The police officer proceeded to testify that on December 1, 1997, he went to
appellant's residence and photographed a shotgun. He identified the photographs and
they were admitted into evidence. No mention was made of any prior crime, or even about
any illegality of the modifications made to the shotgun. This photograph was certainly
relevant because it was a picture of a shotgun with custom modifications matching the
shotgun which had been identified as the shotgun used in the crime, and because it made
appellant's possession of a weapon similar to the one recovered in this case more likely. 
However, the mere possession of the weapon in the photographs was not imputed to the
jury to be a crime, nor was there mention that the weapon might have been used in another
crime. Simply stated, the State offered to the jury a photograph of a shotgun with custom
modifications previously known to have belonged to appellant, and let the jury draw its own
conclusions, and we conclude the trial court did not abuse its discretion by overruling
appellant's Rule 404(b) objection. Issue two is overruled.

 By his third issue, appellant argues this same evidence should have been excluded
under Tex. R. Evid. 403. He urges us to conclude the trial court erred by not excluding the
evidence because it was substantially more prejudicial than probative. We disagree. 
When evidence is found to be relevant, it still must be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. When the
trial court is called upon to balance the probativeness and prejudice of evidence, a
presumption exists which favors finding the evidence more probative than prejudicial. 
Barron v. State, 864 S.W.2d 189, 193 (Tex.App.-Texarkana 1993, no pet.). This Court will
reverse only upon a clear abuse of discretion. See Ransom v. State, 920 S.W.2d 288, 299
(Tex.Cr.App. 1996), cert. denied, 519 U.S. 1030, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996); 
see also Montgomery v. State, 810 S.W.2d 372, 390 (Tex.Cr.App. 1990) (stating that "[s]o
long as the trial court . . . operates within the boundaries of its discretion, an appellate
court should not disturb its decision, whatever it may be."). 

 First, we note the evidence presented by the prosecution to show appellant in fact
committed the offense of aggravated robbery was strong: appellant's accomplice
confessed to the aggravated robbery and the physical evidence supported the
accomplice's statement. Other witness testimony about appellant's behavior and
statements the night of the robbery tended to support the accomplice's testimony. On the
other hand, we note the perception of the public toward illegally modified shotguns, which
could potentially affect the jury. Both the recovered shotgun and the one depicted by the
photographs shared the same apparently illegal modifications. However, no mention was
made at trial about apparent illegality of the modifications. The evidence was, however,
important to the prosecutor's efforts to conclusively establish a link between appellant and
the shotgun recovered.

 Any evidence presented by the State is generally prejudicial to the defendant; 
however, evidence should only be excluded when the probative value is substantially
outweighed by the danger of unfair prejudice. In light of these facts, we hold that the trial
court did not abuse its discretion in concluding that the danger of unfair prejudice did not
substantially outweigh the probative value of this evidence. Issue three is overruled.

 By his first issue, appellant contends the evidence was insufficient as a matter of
law to support his conviction for the offense of aggravated robbery. Before we commence
our analysis of this issue, we take special notice of his argument that "there was no
evidence, beyond a reasonable doubt, linking appellant with a shotgun" and that "there is
no evidence, beyond a reasonable doubt, linking appellant with any recovered shotgun
shells." By these contentions, appellant challenges only the aggravating factor of the
offense, to-wit: the use or exhibition of a firearm. Although appellant challenges the
sufficiency of the evidence regarding his use of the shotgun, he does not challenge his
involvement in the robbery, but rather claims the State did not meet its burden connecting
him to the use or exhibition of a firearm. We disagree.

 In conducting a legal sufficiency review, we must determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820
S.W.2d 154, 157 (Tex.Cr.App. 1991). As an appellate court, we should uphold the jury's
verdict unless it is irrational or unsupported by more than a mere modicum of evidence. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988). 

 For the jury to convict appellant of the offense of aggravated robbery, it was
required to find beyond a reasonable doubt that appellant exhibited a deadly weapon while
committing robbery. Tex. Pen. Code Ann. § 29.03(a)(2) (Vernon 1994). According to the
testimony of his accomplice, appellant had the gun prior to the robbery, brought it with him
to the robbery, shot the victim in the face, then discarded it sometime afterward. This
testimony was compelling, but was given by appellant's accomplice. The requirement for
accomplice testimony is set out in section 38.14 of the Texas Code of Criminal Procedure
Annotated (Vernon 1979): a conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the defendant with
the offense committed; and the corroboration is not sufficient if it merely shows the
commission of the offense. 

 When considering accomplice testimony in determining the sufficiency of the
corroborating evidence, all of the accomplice testimony shall be eliminated. McDuff v.
State, 939 S.W.2d 607, 612 (Tex.Cr.App. 1997), cert. denied, 522 U.S. 844, 118 S.Ct. 125,
139 L.Ed.2d 75 (1997). The remaining evidence is then considered in the light most
favorable to the jury's verdict. Gill v. State, 873 S.W.2d 45, 48 (Tex.Cr.App. 1994). The
non-accomplice evidence does not need to prove appellant's guilt beyond a reasonable
doubt nor does it have to directly link appellant to the crime; it must only tend to connect
appellant to the offense. Burks v. State, 876 S.W.2d 877, 888 (Tex.Cr.App. 1994), cert.
denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); Reed v. State, 744 S.W.2d
112, 126 (Tex.Cr.App. 1988). When considering the sufficiency of non-accomplice
testimony each case must be considered on its own facts and circumstances. Etheredge
v. State, 542 S.W.2d 148, 150 (Tex.Cr.App. 1976). All the facts and circumstances in
evidence may be looked to as furthering the necessary corroboration. Callaway v. State,
818 S.W.2d 816, 832 (Tex.App.-Amarillo, 1991, pet. ref'd). 

 The victim testified appellant had the same size and build as the person who shot
her. A witness who gave both men a ride after the robbery testified that the accomplice
asked appellant, "Why did you shoot the lady?" Appellant made no response, but when
asked what he did with the gun, he said "I stashed it in the graveyard." A shotgun was
recovered from a cemetery adjacent to the store that was robbed, through which the
accomplice testified the two men fled. This shotgun was identified by the victim's husband
as the weapon appellant used to shoot his wife. A picture of a gun known to have been
owned by appellant was introduced at trial, and the jury was able to draw its own
conclusion about the similarity between the picture and the gun actually recovered. 

 From all the evidence, we conclude that the non-accomplice testimony and tangible
evidence together is sufficient to corroborate the accomplice testimony. We conclude that
a rational trier of fact could have found the essential elements of aggravated robbery
beyond a reasonable doubt. Viewing the facts in the light most favorable to the verdict and
without substituting our judgment for that of the jury's, we hold that the evidence is legally
sufficient to sustain appellant's conviction. Appellant's first issue is overruled. 

 Accordingly, the judgment of the trial court is affirmed. 


 Don H. Reavis

 Justice


Do not publish.



m evidence because (1) they were the product of a search
and seizure based on an illegal search warrant, (2) the provisions of CCP article 38.22
were not complied with, and (3) since article 38.22 was not complied with, the statements
could only have been admitted as res gestae statements, and they did not qualify as such. 
Appellant asserts that his statements were not in the nature of excited utterances, he was
not emotionally stimulated, or in the grip of any shocking event, and relies on Smith v.
State, 514 S.W.2d 749 (Tex.Crim.App. 1974). 

 The State asserts that the statements are res gestae of the arrest and offense, and
are admissible under article 38.22 § 5. The State refers us to Etheridge v. State, 903
S.W.2d 1 (Tex.Crim.App. 1994). 

 We have previously determined that the search warrant was valid. Thus,
appellant's allegation that the trial court erred in refusing to exclude the statements as the
product of an illegal search is without merit.

 Article 38.22 § 5 provides:

 Nothing in this article precludes the admission of a statement made by the
accused . . . that is the res gestae of the arrest or of the offense, . . . .

 In Smith, officers were in the process of searching a residence pursuant to a search
warrant when Smith entered the house. Smith was arrested and given Miranda warnings. 
Approximately 10-15 minutes later, one of the officers showed Smith a bag found under
a bed mattress and asked Smith what it was. Smith responded that it was his and was
"stuff," which was interpreted at trial to indicate heroin. The Court of Criminal Appeals held
that Smith's statements were not admissible as res gestae statements. In so holding, the
Court noted that the statements were not made spontaneously, were in answer to
questioning by an officer some 10-15 minutes after the arrest, and the record was silent
as to whether Smith was in a condition of excitement, emotional stimulation or in the grip
of any shocking event. See Smith, 514 S.W.2d at 753. Etheridge, relied on by the State,
distinguished Smith on the facts in determining that defendant's post-arrest confession was
admissible. In Etheridge, the record contained evidence that the defendant was in an
emotional state when he made the post-arrest confession to having killed the victim. See
Etheridge, 903 S.W.2d at 15.

 Statements by defendants which are classified as res gestae statements can be
either statements (1) made while a defendant is in an emotional, excited state or in the
throes of a shocking event or (2) statements which are described as verbal acts. See
Ramos v. State, 419 S.W.2d 359, 362-64 (Tex.Crim.App. 1967) (statement admissible
under verbal act doctrine "sometimes referred to as the so-called res gestae rule"). In
Jones v. State, 458 S.W.2d 654 (Tex.Crim.App. 1970), the appellant was a passenger in
a vehicle which was stopped because of the driver's possible intoxication. During the stop,
Jones exited the vehicle and was interrogated by officers concerning a bottle of pills found
in the glove compartment. Appellant made statements that he and the driver had
purchased the pills in Mexico. The Court of Criminal Appeals held that even in the
absence of a showing of spontaneity to justify admission under the "true res gestae rule,"
the statements were admissible under the verbal act doctrine, or "so-called" res gestae
rule. Id. at 656. And, in Harryman v. State, 522 S.W.2d 512 (Tex.Crim.App. 1975),
Harryman was arrested and searched for weapons. During the search, a condom tied in
a knot and containing several smaller condoms was discovered inside his belt. The
searching officer asked Harryman, "What is this?", to which he replied that it was heroin. 
Citing CCP 38.22, Jones, and other precedent, and without discussion of whether the
record contained evidence of Harryman's state of mind or the spontaneity of the statement,
the Court of Criminal Appeals held that admission of the statement as res gestae of the
arrest was not reversible error. Harryman, 522 S.W.2d at 516-17.

 The trial court could have, within its discretion, determined that appellant's first
statement ("I knew sooner or later this was bound to happen.") was res gestae of the
arrest. Admission of the statement was not an abuse of discretion. Even if appellant's first
statement was admitted in error, however, after examining the record as a whole and in
a neutral light, we conclude that its admission was harmless. See TRAP 44.2(b); Johnson
v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). 

 We need not decide if the remainder of appellant's statements were admissible as
either true res gestae or verbal act res gestae. The trial court's action in admitting
evidence is not error if the evidence is admissible for any purpose, regardless of the
reason for admitting the evidence. See Sewell v. State, 629 S.W.2d 42, 45 (Tex.Crim.App.
1982). CCP 38.22 § 3(c) provides that § 3(a) does not apply to preclude admission of a
statement which contains assertions of facts or circumstances that are found to be true and
which conduce to establish the guilt of the accused. The provisions of § 3(c) do not limit
the manner in which the facts asserted are found to be true. See Briddle v. State, 742
S.W.2d 379, 388 (Tex.Crim.App. 1987). Subsequent corroboration suffices. See Port v.
State, 791 S.W.2d 103, 107 (Tex.Crim.App. 1990). If one of multiple assertions in the
statement is found to be true and conduces to show the guilt of the accused, then the
statement in its entirety is admissible. Id. 

 With the exception of the first statement complained of by appellant ("I knew sooner
or later this was bound to happen."), the statements dealt with factual matters concerning
contents of drug paraphernalia found by the officers in the house being searched. The
statements described the contents of tanks as anhydrous ammonia; described the contents
of a glass vase in the front room as a liquid; and effectively stated that the contents of
glass jars would test "positive." All three statements later proved to be factually correct
and conduced with other evidence to prove appellant's guilt of the crime charged. The trial
court did not abuse its discretion in admitting the statements. See id. 

 We overrule issues five and six. 

ISSUE SEVEN: LESSER-INCLUDED OFFENSE CHARGE 

 Appellant's seventh issue urges that the trial court erred in denying his requested
lesser-included charge for possession of only 200-400 grams of methamphetamine. In
presenting his issue, he references testimony of his chemist expert Courtney as to how
much methamphetamine would be produced if ". . . you took the chemicals in [exhibits] 6,
7 and 8 in the stage that they are right now and went to the final product . . . ." Courtney
estimated that the methamphetamine finally produced from the exhibits, were it processed
to completion, would probably be "around-somewhere around half of [400 grams]."

 The State counters that the testimony referenced by appellant is no evidence of
weight of the controlled substance which appellant was indicted for possessing because
the substance appellant possessed was not in final form, but was a mixture, solution or
other substance containing the controlled substance. As such, the statute defined
"controlled substance" as the aggregate weight of the entire liquid containing
methamphetamine as well as the methamphetamine in solution. Further, the State urges
that the error, if any, was harmless because the punishment range for possession of 400
grams or more is 25 years to life and the punishment range for possession of 200-400
grams is 10 years to life. The State reasons that since appellant was sentenced to 95
years incarceration, conviction of the lesser offense of 200-400 grams would not have
resulted in a lesser sentence. 

 To determine if a defendant is entitled to a lesser-included offense instruction, a two
prong test applies: (1) the lesser-included offense must be included within the proof
necessary to establish the offense charged, and (2) some evidence must exist in the
record that would permit a jury rationally to find that if the defendant is guilty, he is guilty
only of the lesser-included offense. See Lofton v. State, 45 S.W.3d 649, 651
(Tex.Crim.App. 2001); Wesbrook v. State, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000). 

 The State is correct that Courtney's testimony is no evidence that appellant
possessed only 200-400 grams of controlled substance. The testimony referred to was
a hypothetical question based on different facts from those in evidence. The hypothetical
asked Courtney to assume a change in the composition and weight of the substance in
appellant's possession based on "cooking" of the substances beyond the stage in which
they were found during the search. Because there is no evidence which would have
permitted the jury to rationally find that appellant was guilty only of possessing 200-400
grams of methamphetamine, the trial court did not err in refusing to charge the jury on a
lesser-included offense. We also agree with the State that even if refusal to charge the
jury on the lesser offense was error, the error was harmless given the punishment
assessed by the jury. See TRAP 44.2(b). ISSUE EIGHT: SUFFICIENCY OF EVIDENCE

OF WEIGHT OF METHAMPHETAMINE


 Issue eight challenges the legal sufficiency of the evidence that appellant
possessed 400 or more grams of methamphetamine. He relies on various authorities,
including Cawthon v. State, 849 S.W.2d 346 (Tex.Crim.App. 1992), to support his
assertion that the State failed to prove the weight of the methamphetamine which appellant
was charged with possessing. He posits that the State's proof was insufficient because
it did not prove the weight of the actual methamphetamine and the weight of the other
substances in which the drug was found or with which it was mixed. The State responds
that Cawthon is inapplicable because the statute under which appellant was convicted had
been amended and differed from that under consideration in Cawthon, and because the
definition of "controlled substance" under which appellant was charged did not require
proof of the separate weights of the methamphetamine and any dilutants or other
substances with which the methamphetamine was mixed. We agree with the State. 

 Under Cawthon, the State was required to prove that an adulterant or dilutant added
to the illegal substance (methamphetamine), with intent to increase the quantity, did not
affect the activity of the illegal substance. The statute under which appellant was
convicted is not so formulated as was the statute under consideration in Cawthon. At the
time of appellant's indictment, the definition of "controlled substance" included a drug, an
adulterant, a dilutant, and an immediate precursor, see Tex. Health & Safety Code Ann.
§ 481.002(5) (Vernon 2003), and "adulterant or dilutant" was defined by the statute as any
material that increases the bulk or quantity of a controlled substance, regardless of its
effect on the chemical activity of the controlled substance. Tex. Health & Safety Code
§ 481.002(49) (Vernon 2003). Cawthon is inapposite to the matter before us. 

 As an appellate court reviewing a challenge to the legal sufficiency of the evidence,
we consider all the record evidence, including direct and circumstantial, both admissible
and inadmissible, in the light most favorable to the jury's verdict. We then determine if any
rational jury could have found all the essential elements of the offense beyond a
reasonable doubt based upon such record evidence. See Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A reviewing court is to presume
that the evidence is legally sufficient to support the jury verdict. See Johnson v. State, 23
S.W.3d 1, 11 (Tex.Crim.App. 2000). 

 Both the State and appellant presented chemist witnesses who testified to the
weight and composition of the methamphetamine, mixtures of liquids containing
methamphetamine, and precursors of methamphetamine seized from the house searched
when appellant was arrested. The chemists' testimony was in agreement that the weight
of powder, liquids containing some levels of methamphetamine and precursors of
methamphetamine exceeded 400 grams. Appellant argues that the weight of pure
methamphetamine without any dilutants or adulterants (i.e., with the chemicals and some
or all of the dilutants and adulterants removed by further processing of the mixtures) would
have been less than 400 grams. (6) 

 Under the statutory definition, which the trial court included in the jury charge, the
State did not have to prove that the amount of "pure" methamphetamine was 400 grams
or more, or that dilutants did not affect the chemical activity of the methamphetamine. The
evidence was legally sufficient to support a jury finding that the amount of controlled
substance in question was 400 grams or more. We overrule issue eight. 
 

ISSUE NINE: ALLOWING STATE TO EXPAND 

INDICTMENT VIA THE JURY CHARGE


 By his issue nine, appellant complains that the jury charge allowed the State to
expand the scope of the crime for which the jury could convict appellant from the crime
charged in the indictment. His objection at trial was that the charge defined "controlled
substance" as including the aggregate weight of any mixtures, solution or other substance
contained in a controlled substance, while the indictment only indicted for possession of
methamphetamine. 

 As previously noted, appellant was indicted for "intentionally or knowingly
possess[ing], with intent to manufacture, a controlled substance, namely,
methamphetamine, in an amount of 400 grams or more." See Tex. Health & Safety Code
§§ 481.112, 124 (Vernon 2003). The jury was charged in accordance with the language
of the indictment and found appellant guilty of "possession of a controlled substance,
methamphetamine in an amount of 400 grams or more, with intent to manufacture, as
alleged in the indictment." The jury was instructed, in part, that (1) methamphetamine was
a controlled substance and (2) "'controlled substance' means a substance, including a
drug, an adulterant, a dilutant, and an immediate precursor. The term includes the
aggregate weight of any mixture, solution, or other substance containing a controlled
substance." The definition of controlled substance conformed to the statutory definition.

 Appellant cites no authority for his position other than general authority for the
proposition that the jury charge should not enlarge the crime pled in the indictment. In
regard to such position he references Garcia v. State, 640 S.W.2d 939 (Tex.Crim.App.
1982). 

 Under the record before us, appellant's reliance on Garcia is misplaced. In Garcia,
the defendant was charged with hindering an arrest "intentionally with intent to hinder" the
arrest. The jury was charged to find the defendant guilty if the defendant "knowingly or
intentionally" hindered the arrest. The jury charge was held to have been defective in two
ways for allowing the defendant to be convicted for knowingly or intentionally hindering the
arrest: (1) the inclusion of "knowingly" resulted in the jury charge allowing conviction for
acts which were not a crime under the statute which proscribed only actions taken with
intent to hinder an arrest; and (2) the jury charge allowed conviction for a "knowingly"
mens rea which was not included in the indictment. Id. at 941. 

 By his issue, appellant does not urge that the charge allowed conviction for actions
which were not a crime. Neither does he claim that the definition of controlled substance
did not conform to the statute nor that the instruction that the weight of the substance
included the aggregate weight of any mixture, solution or other substances containing a
controlled substance was erroneous. Appellant's written Exception To Form of Indictment
stated that he was charged by indictment "with the offense of Possession with Intent to
Manufacture a Controlled Substance." The exception urged that the indictment failed to
specify what he "possessed with the intent to manufacture a controlled substance, to wit;
methamphetamine [sic]". At the pre-trial presentation of the exception, the State
responded to appellant's exception argument by specifying that the indictment specified,
and the State's proof would be, that appellant possessed two different substances which
comprised methamphetamine: (1) the finished product, and (2) product that was still in the
process of being manufactured, which was not finished, but which nevertheless contained
methamphetamine. The charge did not enlarge the indictment. Issue nine is overruled. 

ISSUE TEN: SUFFICIENCY OF THE INDICTMENT

 Issue ten asserts that the trial court erred in failing to quash the indictment or to
dismiss the charges against appellant because the language of the indictment did not give
him sufficient notice of the charge against him. He claims that the indictment language
that he "intentionally or knowingly possess[ed], with intent to manufacture, a controlled
substance, namely, methamphetamine, in an amount of 400 grams or more" did not give
him adequate notice to prepare his defense to the State's proof that the weight of the
methamphetamine included adulterants and dilutants. He alleges that, had he been on
notice that the State was going to prove the weight of the methamphetamine, including
dilutants and adulterants, his entire trial strategy would have been different. 

 Appellant's written Exception to Form of Indictment was filed on the morning the
case was to go to trial. The written Exception specified that the indictment failed to allege
what substances appellant possessed with the intent to manufacture a controlled
substance, to wit: methamphetamine. When presenting the written Exception to the
indictment at a pre-trial hearing, trial counsel did not assert that the indictment did not give
notice of the weight of methamphetamine in question or how the weight was to be
calculated. Rather, the presentation made to the trial court conformed to the written
pleading: the indictment did not state what materials were possessed out of which
appellant was allegedly going to manufacture methamphetamine. 

 To preserve error for appellate review, the issue on appeal must correspond to the
objection made at trial. See Dixon v. State, 2 S.W.3d 263, 265 (Tex.Crim.App. 1998). 
Appellant's complaint on appeal does not conform to his written exception or to the
objection presented to the trial court. 

 Moreover, appellant offers no reference to record evidence supporting the assertion
that his trial strategy would have been different. An appellant urging harm from a trial
court's error does not have the burden to prove harm from the error. See Ovalle v. State,
13 S.W.3d 774, 787 (Tex.Crim.App. 2000). Rather, the appellant is required only to
suggest, in light of the record, how prejudice may have occurred. Id. At that point, the
reviewing court must make its determination as to what effect, if any, the error had. Id. 
Appellant does not point out, nor does our review of the record reveal, evidence that
appellant was harmed by the indictment's language. See TRAP 44.2. 

 Appellant's issue ten is overruled. 

CONCLUSION

 Having overruled appellant's issues, we affirm the judgment of the trial court. 

 

 Phil Johnson

 Chief Justice




Do not publish. 




1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. Further reference to a Rule of Appellate Procedure will be by reference to "TRAP
____."
3. Further reference to the Code of Criminal Procedure will be as "CCP ___." 
4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966).
5. See Robertson v. State, 871 S.W.2d 701, 714 (Tex.Crim.App. 1993) for the
requirement as to Miranda warnings when statements are offered as res gestae. 
6. Because of our disposition of appellant's issue, we need not consider the weight
of any precursors to methamphetamine which were found.